IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Civil No. 1:17-cv-00317-RJC

| | |
|---|---|
| SYDNEY O. CURRY )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of Social )<br>Security, )<br>)<br>Defendant. ) | ORDER |

**THIS MATTER** comes before the Court on the parties' cross Motions for Summary Judgment, (Doc. Nos. 9, 13), and the parties' briefs and exhibits in support. The motions are ripe for adjudication.

I. BACKGROUND

A. Procedural Background

Sydney O. Curry ("Plaintiff") seeks judicial review of Nancy A. Berryhill's ("Defendant" or "Commissioner") denial of his social security claim. Plaintiff filed applications for disability insurance benefits under Title II of the Social Security Act ("SSA") and supplemental security income under Title XVI of the SSA on June 10, 2014, alleging a disability onset date of January 25, 2013. (Doc. Nos. 8 to 8-1: Administrative Record ("Tr.") at 24). His applications were denied first on August

14, 2014, (Tr. 120), and upon reconsideration on February 24, 2015, (Tr. 128, 130). Plaintiff filed a timely request for a hearing on March 9, 2015, (Tr. 132), and an administrative hearing was held by an administrative law judge ("ALJ") on September 29, 2016. (Tr. 48).

Following this hearing, the ALJ found that Plaintiff was not disabled under the SSA. (Tr. 21–35). Plaintiff requested a review of the ALJ's decision, but the Appeals Council denied Plaintiff's request for a review. (Tr. 1). After having exhausted his administrative remedies, Plaintiff now seeks judicial review of Defendant's denial of his social security claim in this Court.

B.  Factual Background

The question before the ALJ was whether Plaintiff was disabled under Sections 216(i), 223(d), and 1614(a)(3)(A) of the SSA. (Tr. 23). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the SSA.[1] Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Plaintiff alleges that his disability began on January 25, 2013, due to his mental impairments of generalized anxiety disorder and panic disorder with agoraphobia. (Tr. 337–385, 398–427, 457, 466–693).

After reviewing Plaintiff's record and conducting a hearing, the ALJ found that

---

[1] Under the SSA, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

2

Plaintiff did not suffer from a disability as defined in the SSA. (Tr. 35). In reaching his conclusion, the ALJ used the five-step sequential evaluation process established by the Social Security Administration for determining if a person is disabled. The Fourth Circuit has described the five-steps as follows:

> [The ALJ] asks whether the claimant: (1) worked during the purported period of disability; (2) has an impairment that is appropriately severe and meets the duration requirement; (3) has an impairment that meets or equals the requirements of a listed impairment and meets the duration requirement; (4) can return to [his] past relevant work; and (5) if not, can perform any other work in the national economy.

Radford v. Colvin, 734 F.3d 288, 290–91 (4th Cir. 2013) (paraphrasing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant has the burden of production and proof in the first four steps. Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). However, at the fifth step, the Commissioner must prove that the claimant is able to perform other work in the national economy despite his limitations. See id.; see also 20 C.F.R. § 416.960(c)(2) (explaining that the Commissioner has the burden to prove at the fifth step "that other work exists in significant numbers in the national economy that [the claimant] can do"). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 33–35).

In reaching his decision, the ALJ first concluded at steps one through three that Plaintiff was not employed, that he suffered from severe mental impairments, and that his impairments did not meet or equal any of the impairments listed in the Administration's regulations. (Tr. 26–27). Therefore, the ALJ examined the evidence

3

of Plaintiff's impairments and made a finding as to Plaintiff's Residual Functional Capacity ("RFC"):

> [T]he claimant has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple, routine jobs and job tasks that would not require more than occasional contact with the general public.

(Tr. 29). Having established Plaintiff's RFC, the ALJ concluded that Plaintiff could not perform the work in which he had previously been employed. (Tr. 33). Therefore, the ALJ proceeded to the fifth and final step of the process: determining whether, given the limitations embodied in his RFC, Plaintiff could perform any work that existed in significant numbers in the national economy. (Tr. 33–34). To make that determination, the ALJ relied on the testimony of a Vocational Expert ("VE"). The VE testified that Plaintiff would be able to perform at least three representative occupations that exist in significant numbers in the national economy. (Tr. 34, 61–62). The ALJ accepted the VE's testimony and concluded that Plaintiff's impairments did not prevent him from working; consequently, Plaintiff's applications for Title II and Title XVI benefits were denied. (Tr. 34–35).

## II. STANDARD OF REVIEW

The Court must decide whether substantial evidence supports the final decision of the Commissioner and whether the Commissioner fulfilled her lawful duty

in her determination that Plaintiff was not disabled under the Social Security Act. See 42 U.S.C. §§ 405(g) and 1382(c).

The SSA, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the SSA provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and [do]ing more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner,

5

assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome–so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

Plaintiff alleges that the ALJ made three errors: (1) the ALJ, in his RFC assessment, failed to account for Plaintiff's limitations in concentration, persistence, or pace ("CPP") found by the ALJ at Step Three; (2) the ALJ did not properly evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms under SSR 16-3p; and (3) the ALJ failed to offer adequate justification for the limitations in the RFC under SSR 96-8p. Because the Court agrees with Plaintiff's first allegation of error, the Court remands this case for further proceedings.

Plaintiff first argues that the ALJ erred in determining his mental RFC when, in the face of his moderate limitation in CPP, the ALJ did not discuss Plaintiff's ability to stay on task for a full workday and workweek. "[T]he ability to perform simple tasks differs from the ability to stay on task." Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015). "Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. As a result, Mascio stands for the rule that an ALJ must either adopt a limitation that addresses a claimant's ability to stay on task or explain why such a limitation is unnecessary, even in the face of the claimants CPP limitations. Grant v. Colvin, No. 1:15-CV-00515, 2016

WL 4007606, at *9 (M.D.N.C. July 26, 2016). While Mascio held that a limitation to simple tasks does not address a claimant's ability to stay on task, other limitations, such as a limitation of performing these simple tasks in two-hour segments,[2] can.

Here, at Step Three, the ALJ found that Plaintiff has moderate difficulties in CPP: "With regard to [CPP], [Plaintiff] has moderate difficulties. He can sustain focused attention and concertation sufficiently enough to permit the timely and appropriate completion of tasks commonly found in simple, routine, not detailed or complex job tasks." (Tr. 28). In his Step Three finding, the ALJ did not cite to any evidence in the record which substantiated this conclusory statement, nor did he explain how he reached this determination. Therefore, the Court turns to the ALJ's discussion of medical and opinion evidence in Step Five to try to divine what information the ALJ based this finding upon. Upon review, the Court assumes that the ALJ based his Step Three finding that Plaintiff has a moderate limitation in CPP on Plaintiff's own allegations regarding his limitations; mental health

---

[2] See, e.g., Fender v. Berryhill, No. 1:17-CV-00041, 2018 WL 1536485, at *7 (W.D.N.C. Mar. 29, 2018) ("Here, the Court finds that a two-hour limitation directly addresses Plaintiff's moderate limitations in concentration, persistence or pace ("CPP"). Not only have other courts reached this conclusion, but this two-hour limitation closely resembles the effects of limiting a claimant to a non-production pace, which also adequately addresses moderate difficulties in CPP." (citing numerous cases from other district courts in the Fourth Circuit)). The Court notes, however, that in a recent opinion, the Fourth Circuit admonished an ALJ for limiting the plaintiff to performing work that does not require "a production rate or demand pace" without explaining what those terms mean. Thomas v. Berryhill, 916 F.3d 307, 312 n.5 (4th Cir. 2019), as amended (Feb. 22, 2019).

treatment records from Helen Ross McNabb Center; the assessments of Dr. Chad Sims and the State Agency psychological consultants. (Tr. 29–32). This is because these are the only sources the ALJ includes in his decision which reference that Plaintiff has some limitation in concentration and/or persistence. For example, the ALJ noted that Plaintiff reported that "he has lack of focus and trouble remembering and following instructions." (Tr. 29). The ALJ also discussed that, in mental health treatment records from Helen Ross McNabb Center on April 10, 2013, the clinician reported that "his attention and concentration were noted to be poor on occasion," and Joshua Vincent, Licensed Marital and Family Therapist, noted on September 17, 2014 that Plaintiff "had moderate limitations in . . . [CPP]." (Tr. 30). Additionally, the ALJ referenced that Dr. Sims assessed that Plaintiff had "up to moderate impairment in ability to sustain concentration" when he examined Plaintiff on May 12, 2016. (Tr. 31). The ALJ also noted that Dr. Sims stated that Plaintiff "reported problems with short-term memory and concentration abilities with an example of forgetting to complete chores," but Dr. Sims noted that Plaintiff had difficulty providing other examples. (Id.). Therefore, after stringing the opinions referencing Plaintiff's limitations in concentration and persistence together, the Court finds that some record evidence supports the ALJ's conclusion that Plaintiff has moderate limitations in concentration and persistence. Yet, nowhere in the opinion does the ALJ address Plaintiff's ability to maintain pace. This is problematic:

> Here, the ALJ's RFC finding and hypothetical question noted that Weeks is "limited to performing simple, routine, repetitive tasks with only occasional contact with the general public in an environment with few workplace changes." Tr. 18, 44. Through those limitations, the ALJ sufficiently accounted for Weeks's difficulties with concentration and persistence. The limitation failed to account, however, for Weeks's moderate difficulties with pace.

Weeks v. Colvin, No. 5:14-CV-155, 2015 WL 5242927, at *2 (E.D.N.C. Sept. 8, 2015).

Here, none of the aforementioned sources assert that limiting Plaintiff to simple, routine, not detailed or complex, job tasks would adequately account for Plaintiff's moderate limitations in CPP and permit him to timely and appropriately complete job tasks—speaking to Plaintiff's ability to maintain pace. The only source which touched on Plaintiff's ability to maintain pace during the workday were the assessments of the State Agency psychological consultants. The ALJ noted that they opined that Plaintiff "could understand, remember, *and complete* simple tasks and maintain attention and concentration for periods of at least two hours in an eight-hour workday." (Tr. 32). The ALJ gave some weight to this opinion, as he also found it consistent with "the medical evidence of record" and "supported by the medical signs and findings." (Id.). Extrapolating from this brief discussion, the Court could guess that this is what the ALJ hung his hat on in determining that limiting Plaintiff to simple, routine jobs and tasks would adequately account for Plaintiff's mental limitations and moderate difficulties in CPP. But this is the type of guesswork that Mascio prohibits. Johnson v. Berryhill, No. 1:17-CV-00034, 2018 WL 1185510, at *4 (W.D.N.C. Mar. 7, 2018) ("Because the Court cannot take part in

9

such a guessing game, the lack of explanation warrants remand." (citing Mascio, 780 F.3d at 638)).

The ALJ did not include additional limitations in Plaintiff's RFC, such as a limitation relating to working in two-hour segments. This is perplexing given the fact that the State Agency psychological consultants' mental assessments—which appears to be the primary source the ALJ relied on in compensating for Plaintiff's nonexertional limitations in the RFC—found that Plaintiff "could understand, remember, and complete simple tasks and maintain attention and concentration for periods of *at least two hours* in an eight-hour workday." (Tr. 32) (emphasis added). Yet, despite an explicit reference to Plaintiff's ability to maintain pace for two-hour segments, the ALJ does not explain why he did not adopt such a limitation in Plaintiff's RFC. This would have "directly addresse[d] Plaintiff's moderate limitations in concentration, persistence or pace ("CPP")." Fender, 2018 WL 1536485, at *7. Therefore, the ALJ's limitation to "simple, routine jobs or tasks"—standing alone—fails to address Plaintiff's ability to stay on task and maintain pace.[3]

---

[3] Plaintiff's limitation to only occasional interactions with the general public relates to social functioning, not to CPP. Limitations on social interaction in the workplace are insufficient to satisfy Mascio. Oates v. Berryhill, 3:16-CV-726, 2017 WL 3687926, at *5 (W.D.N.C. Aug. 24, 2017); Pilcher v. Colvin, No. 5:14-CV-191, at *5 (W.D.N.C. Mar. 16, 2016) (noting that a majority of districts in North Carolina have found such limitations do not sufficiently account for moderate limitations in CPP and citing cases); see also Holbrook v. Berryhill, No. 3:16-CV-713, 2018 WL 325244, at *5 (W.D.N.C. Jan. 8, 2018) (considering limitations in coworker and supervisor contact as an aspect of moderate limitation in social functioning).

Therefore, the Court must look to the ALJ's decision to determine if he adequately explained why Plaintiff did not require a limitation addressing the ability to stay on task or require additional limitations to account for Plaintiff's moderate difficulties in CPP. Upon review, the Court finds these explanations absent from the ALJ's decision. And thus, the Court is left to guess why the ALJ did not address Plaintiff's ability to stay on task in his RFC or include additional limitations in the RFC. This "guessing" is what <u>Mascio</u> prohibits because it frustrates this Court's opportunity to conduct a "meaningful review." <u>Mascio</u>, 780 F.3d at 636; <u>see also</u> <u>Patterson v. Comm'r of Soc. Sec. Admin.</u>, 846 F.3d 656, 663 (4th Cir. 2017) (admonishing ALJs to "[s]how [their] work" and explain how they arrive at their conclusions); <u>Monroe v. Colvin</u>, 826 F.3d 176, 189 (4th Cir. 2016) (explaining that an ALJ must "build an accurate and logical bridge from the evidence to his conclusion").

In attempting to differentiate this case from <u>Mascio</u>, Defendant asserts that the "ALJ fully discussed the medical evidence which showed the effectiveness of [Plaintiff's] medications, the observations of examiners that showed evidence of inconsistencies, exaggeration, or limited effort, and [Plaintiff's] recent activity." (Doc. No. 14 at 5). None of these things have to do with Plaintiff's ability to stay on task and complete simple, routine tasks for a full eight-hour workday. In fact, the medical and opinion evidence the ALJ cited to as persuasive because he found the assessments to be consistent with the medical evidence of record and supported by medical signs and findings seems to corroborate the ALJ's assessment that Plaintiff

has moderate limitations in CPP. (Tr. 31–32).[4] Therefore, this Court is left to question why no additional limitations for CPP were included in Plaintiff's RFC.

When posing hypothetical questions to the VE, the ALJ limited Plaintiff to performing "only simple routine jobs and job tasks that would not require more than occasional contact with the general public." (Tr. 61–62). In response, the VE gave the ALJ examples of three different jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Tr. 62). The VE stated that those occupations were "a representative, nonexhaustive list." (Id.). Notably, the ALJ asked the VE what effect an additional limitation that Plaintiff's impairments "would frequently interfere with his ability to concentrate and persist at work task[s]" would have on Plaintiff's ability to perform the three jobs the VE previously mentioned or any others. (Tr. 62). The VE responded that Plaintiff would not be able to perform any work with the additional limitation. (Id.). "Because the ALJ's hypothetical failed to account for [Plaintiff's] moderate difficulties in [CPP] and because such a difficulty could have impacted Plaintiff's job prospects, remand is appropriate." Weeks v. Colvin, No. 5:14-CV-155-D, 2015 WL 5242927, at *2 (E.D.N.C. Sept. 8, 2015).

## IV. CONCLUSION

Because the ALJ did not assign Plaintiff a limitation addressing the ability to stay on task for a full workday for a full workweek in light of a moderate limitation in CPP, he was then obligated to explain why Plaintiff did not require such a

---

[4] The ALJ gave some weight to the opinions of the State Agency psychological consultants and Dr. Sims. (Tr. 32).

limitation. Such an explanation is missing in the ALJ's decision, warranting remand. The Court remands this case on Plaintiff's first issue, but the ALJ should further note Plaintiff's other objections to his decision upon reconsideration.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 9), is **GRANTED**;

2. Defendant's Motion for Summary Judgment, (Doc. No. 13), is **DENIED**;

3. Defendant's Consent Motion for Extension of Time, (Doc. No. 11), is **DENIED as moot**;

4. This matter is **REMANDED** for further proceedings consistent with this Order; and

5. The Clerk of Court is directed to close this case.

Signed: March 25, 2019

Robert J. Conrad, Jr.
United States District Judge